**PERS TRAVEL, INC., Appellant,**

v.

**CANAL SQUARE ASSOCIATES, Appellee.**

**No. 00–CV–77.**

District of Columbia Court of Appeals.

Argued June 29, 2001.
Decided Aug. 15, 2002.

William N. Rogers, Washington, DC, for appellant.

Anton M. Weiss for appellee.

Before TERRY, GLICKMAN, and WASHINGTON, Associate Judges.

TERRY, Associate Judge:

In this landlord-tenant case, Pers Travel, Inc. ("Pers"), the tenant, appeals from a judgment granting possession of the leased premises to the landlord, Canal Square Associates ("Canal Square"). Pers contends that the trial court erred in rejecting its jury demand. In light of the clear jury waiver clause contained in the lease, we affirm the judgment.

### I

On August 11, 1994, Canal Square and Pers executed a five-year lease for a suite of offices in a commercial building on M Street, N.W., in the Georgetown section of the District of Columbia. The lease was scheduled to expire on September 30, 1999, subject to an "option, to extend the term of this Lease for one (1) successive, additional period ('Extension Period') of five (5) years." On October 1, 1999, Canal Square filed a complaint in the Landlord and Tenant Branch of the Superior Court, seeking possession of the property on the ground that Pers had "failed to vacate [the] property after expiration of [the] term of lease." [1]

Pers responded to the complaint with an "Answer and Jury Demand." Canal Square moved to strike the jury demand, citing paragraph 32 of the lease, in which both parties waived their right to a trial by jury.[2] Pers filed a response, arguing that the lease was a contract of adhesion which failed to highlight the jury waiver clause. Pers asserted that there was "more than a 'reasonable presumption' that [it] did not

---

1. At trial Canal Square established that Pers had failed to exercise the option to renew the lease, and hence that the lease had expired on September 30, 1999.

2. Paragraph 32 of the lease reads in part:
   JURY TRIAL
   32. The parties hereto shall and hereby do waive trial by jury in any action, proceeding or counterclaim brought by either of the parties hereto against the other on any matters whatsoever arising out of or in any way connected with this lease, the relationship of Landlord and Tenant, Tenant's use or occupancy of leased premises and/or any claim of injury or damage.

knowingly waive 'so important a right' as the right to a trial by jury...." At the hearing on Canal Square's motion, Canal Square's counsel stated, "The only issue that I would add is to state that ... the provision in the lease which waives the jury trial ... [is] not hidden, it's not small print or fine print, and it's ... the same as the rest of the lease. It's the same as the rest of the lease and it's captioned, Jury Trial." [3]

Pers' counsel then asked that his client [4] be allowed to testify as to her knowledge of the lease. The court responded:

> I'll assume that she didn't read it and didn't know about it [5] ... until she ran into this problem. I assume that. And I ... don't blame her. I don't like to read contracts like this either, but in a commercial case it's different. It just is different, and they didn't hide that fact, they bargained for it. I mean the reason why you don't want a jury trial is because you get a speedy, quick resolution to these matters. If you have a jury trial in an L & T case, it is expeditious under the rules, but it's not as quick as coming here, and it's a matter, it's a bargaining matter, and reasonable people bargain about that, landlords do that, and I—with all respect, you have to live by your agreements in the commercial world. So I would grant the motion to strike the jury demand filed by the plaintiff in this matter.

A non-jury trial on the merits of the complaint for possession took place a few weeks later before a different judge. At its conclusion, the judge entered judgment for Canal Square.

## II

Pers' only argument on appeal is that the trial court erred in granting Canal Square's motion to strike its jury demand. Pers maintains that it did not knowingly, voluntarily, or intentionally waive its right to a jury, and that the judgment should therefore be reversed and the case remanded for a new trial before a jury.

■■ The Seventh Amendment to the Constitution guarantees the right to a jury trial in "suits at common law, where the value in controversy shall exceed twenty dollars...." U.S. Const. amend. VII. This court, while holding that it is possible to waive the right to a jury trial by failure to make a timely request,[6] apparently has not yet considered the validity of a jury waiver clause in a lease or other contract. We have, however, consistently adhered to a "general rule that one who signs a contract has a duty to read it and is obligated according to its terms." *Hollywood Credit Clothing Co. v. Gibson,* 188 A.2d 348, 349 (D.C.1963) (footnote omitted). "[I]n the absence of fraud, duress, or mistake, '[o]ne who signs a contract which he had an opportunity to read and understand is bound by its provisions' unless enforcement of the agreement should be withheld because the terms of the contract are unconscionable." *Diamond Housing Corp. v. Robinson,* 257 A.2d 492, 493 (D.C.1969) (footnotes omitted); *accord, e.g., Nickens v. Labor Agency of Metropolitan Washing-*

---

**3.** The court agreed that the the jury waiver clause was "not smaller than any other print."

**4.** The "client" is not identified at this point in the record, but Pers states in its brief, without contradiction, that counsel was referring to Catherine Danai, the co-owner of Pers, who testified later at the non-jury trial.

**5.** Pers' counsel confirmed this assumption.

**6.** *See Williams v. Dudley Trust Foundation,* 675 A.2d 45, 55 (D.C.1996); *Dominique v. Ralph D. Kaiser Co.,* 479 A.2d 319, 322 (D.C. 1984) (both recognizing that the right to a jury trial may be waived by a failure to serve and file a timely jury demand).

*ton,* 600 A.2d 813, 817 n. 2 (D.C.1991) ("absent fraud or mistake, one who signs a contract is bound by a contract which he has an opportunity to read whether he does so or not"); *Interdonato v. Interdonato,* 521 A.2d 1124, 1133 (D.C.1987) (same).

In *Rodenbur v. Kaufmann,* 115 U.S.App. D.C. 360, 320 F.2d 679 (1963), the United States Court of Appeals considered the applicability of a jury trial waiver clause in a lease. Recognizing that "courts indulge every reasonable presumption against waiver," *Aetna Insurance Co. v. Kennedy,* 301 U.S. 389, 393, 57 S.Ct. 809, 81 L.Ed. 1177 (1937) (footnote omitted), the court held nevertheless that "a jury trial lawfully may be waived, both before and after a given cause of action shall arise," and "[p]arties ... may in advance contract to waive a trial by jury." *Rodenbur,* 115 U.S.App. D.C. at 364–365, 320 F.2d at 683–684 (footnotes omitted). The plaintiff in *Rodenbur* sued her landlord, claiming that she had been injured in a fall in a common passageway of her apartment building. While the lease contained a jury waiver clause, that provision was limited to claims "connected with" the lease of the apartment. Noting that the case "did not involve terms or conditions of the lease ... or any other such interest," the court held that the jury waiver clause did not apply to the tenant's personal injury claim, which was not "connected with" the lease. *Id.* at 365, 320 F.2d at 684. *Rodenbur,* however, does not help us here. In the case at bar, the issue is simply whether the waiver clause was valid, not, as in *Rodenbur,* whether a valid waiver clause was applicable in the particular case being tried.

■ "It is clear that the parties to a contract may by prior written agreement waive the right to a jury trial." *K.M.C.*

*Co. v. Irving Trust Co.,* 757 F.2d 752, 755 (6th Cir.1985) (citations omitted). It is also generally accepted that a voluntary waiver of the right to a jury trial "suffers from no inherent constitutional or legal infirmity." *Seaboard Lumber Co. v. United States,* 903 F.2d 1560, 1564 (Fed.Cir. 1990), *cert. denied,* 499 U.S. 919, 111 S.Ct. 1308, 113 L.Ed.2d 243 (1991). Although such a waiver must be knowing and voluntary, *see, e.g., National Equipment Rental, Ltd. v. Hendrix,* 565 F.2d 255, 258 (2d Cir.1977),[7] several courts have held that jury waiver clauses "are enforceable unless they are unconscionable, offend public policy, or are shown to be unfair in the particular circumstances." *Chase Commercial Corp. v. Owen,* 32 Mass.App.Ct. 248, 253, 588 N.E.2d 705, 708 (1992) (citation omitted); *accord, e.g., Avenue Associates, Inc. v. Buxbaum,* 83 Misc.2d 719, 719, 373 N.Y.S.2d 814, 815 (N.Y.App. Term 1979) (with limited statutory exceptions, "[a] provision in a lease waiving a trial by jury in the event of any litigation between the parties is valid and binding" (citations omitted)).

In determining whether a jury waiver clause was unconscionable or unfair, the court in *Chase* considered several factors: the nature of the contract, the conspicuousness of the jury waiver clause, the relative bargaining positions of the parties, and the fact that both parties had legal counsel. 32 Mass.App.Ct. at 253–254, 588 N.E.2d at 709. Appellant cites *Whirlpool Financial Corp. v. Sevaux,* 866 F.Supp. 1102, 1105 (N.D.Ill.1994), in which the court listed four factors—roughly the same as, but not identical to, those considered in *Chase*—which it then addressed in deciding whether the jury trial waiver was knowing and voluntary. We decline to

**7.** "Those cases in which the validity of a contractual waiver of jury trial has been in issue have overwhelmingly applied the knowing

and voluntary standard." *K.M.C. Co.,* 757 F.2d at 756 (citations omitted).

endorse any specific list or catalogue of factors, since they will almost certainly vary from one case to another. The issue in any case is not whether this or that factor has been satisfied but rather, as the court held in *Chase*, whether the jury trial waiver is unconscionable, contrary to public policy, or unfair in the particular circumstances presented. Following these general guidelines, we turn to the specific facts disclosed by the record before us.

Pers asserts that Canal Square Associates failed to highlight the jury waiver clause in the lease, emphasizing that it is "in the same size type ... and stuck as paragraph 32 in a 52-paragraph document." Pers also contends "that it may be inferred from the situation and from the form of the lease agreement itself, that there was a gross disparity in bargaining power between the Landlord and the Tenant." Applying the factors considered in *Chase* (and *Whirlpool*), we reject both of these arguments.

While the lease in this case is a standard form contract that was apparently signed with little or no focus on the jury waiver clause, that fact alone does not void the waiver. The fact that waiver language may be "buried" in a standard lease agreement (and "written in language only comprehensible to a landlord-tenant lawyer") is not enough to vitiate the general rule that a jury waiver clause in a lease is valid and binding on the parties. *Fowler Court Tenants, Inc. v. Young*, 119 Misc.2d 492, 496, 463 N.Y.S.2d 686, 689–690 (N.Y.Civ. Ct.1983) (citing *Waterside Holding Corp. v. Lask*, 233 A.D. 456, 253 N.Y.S. 183 (1931)); *see also Chase*, 32 Mass.App.Ct. at 253–254, 588 N.E.2d at 709 (language of waiver clause "is clear and, if not conspicuous, at least legible").

Similarly, most courts have imposed no obligation on the drafter of a lease to highlight the jury waiver clause to ensure its validity. A New York appellate court, for example, in enforcing a jury waiver provision, noted that "the size of the print setting forth the jury waiver provision is identical to that of almost all other printed covenants and conditions of the lease." *In re Estate of Greenberg*, 102 Misc.2d 308, 309, 425 N.Y.S.2d 909, 910 (N.Y.App. Term 1979) (citation omitted). The same is true in this case. We find nothing unfair or unconscionable in the relative size of the jury waiver clause or its placement as paragraph 32 in a 52-paragraph lease.

Pers wrongly assumes that there was an inequality of bargaining power between the parties, merely because the lease was a standard form contract between a landlord and a tenant. For this proposition he relies mainly on *Dreiling v. Peugeot Motors of America, Inc.*, 539 F.Supp. 402 (D.Colo.1982), in which a dispute arose between Peugeot Motors and one of its dealers. Peugeot moved to strike Dreiling's jury demand, basing its motion on a jury waiver clause in the Peugeot Dealer Agreement. The court denied the motion, holding that "[a] constitutional guarantee so fundamental as the right to jury trial cannot be waived unknowingly by mere insertion of a waiver provision on the twentieth page of a twenty-two page standardized form contract." *Id.* at 403. The court found that the Peugeot Dealer Agreement was a "standardized printed dealer contract, drafted by Peugeot," and that the plaintiff "had little, if any, opportunity to negotiate [its] provisions." *Id.* From this the court concluded that "such an inequality in relative bargaining positions suggests that the asserted waiver was neither knowing nor intentional." *Id.*

We do not find *Dreiling* persuasive, nor did the Tenth Circuit in *Telum, Inc. v. E.F. Hutton Credit Corp.*, 859 F.2d 835 (10th Cir.1988), *cert. denied*, 490 U.S. 1021, 109 S.Ct. 1745, 104 L.Ed.2d 182 (1989).

The *Telum* case arose from a dispute between two commercial parties over a lease agreement which contained a jury waiver provision. The court distinguished the rulings in *Dreiling* and *National Equipment Rental v. Hendrix*, holding:

> [Those] decisions relied on facts such as inconspicuous fine print or a gross disparity in bargaining power to invalidate jury waiver provisions. Telum and Hutton, on the other hand, were both sophisticated parties, and the provision here was in the normal print size of the contract.

*Telum*, 859 F.2d at 837. Here, as in *Telum*, the parties are sophisticated commercial entities, and there is nothing in the record that would lead us to find any significant disparity in their relative bargaining power. Pers was free either to negotiate over the inclusion of a jury waiver provision or to find alternative office space.

 Nor is the situation here comparable to that in *Whirlpool*, in which the plaintiff sought to enforce a jury waiver clause contained in a promissory note. Throughout the negotiation of the note, Whirlpool knew that Mr. Sevaux was desperate for a cash infusion in order to sustain his business. The court held that despite Mr. Sevaux's business acumen, Whirlpool "had significantly more bargaining power" during the negotiations, leading it to conclude that the jury waiver clause was not agreed upon knowingly and voluntarily. 866 F.Supp. at 1106. No such inequality of bargaining power is shown on this record. Moreover, Pers has made no claim, nor produced any evidence to suggest, that there was fraud, duress, or mistake. The fact that a party may elect not to read a contract before signing it does not invalidate the contract, and the failure of Pers' representative to read the lease closely did not nullify the jury waiver clause.

Finally, Pers asserts that it had no legal assistance when the lease was agreed upon, whereas Canal Square states that, had this been raised as an issue in the trial court, it could have offered "testimony that the Tenant was represented by an attorney in the negotiation of the lease." Either way, Pers has not established that it lacked sufficient opportunity to review the lease before signing it. *See Interdonato*, 521 A.2d at 1133.

The judgment is therefore

*Affirmed.*